```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                    NORTHERN DIVISION
```

ANN K. SAM, as the Administratrix of the
Estate of NANN K. SMITH, Deceased, For and
on Behalf if Herself, and on Behalf of all
Other Parties Entitled to recover for the
Wrongful Death of NANN K. SMITH                         PLAINTIFF


VS.                           CIVIL ACTION NO. 3:14-cv-5-WHB-RHW


YRC, INC., a Foreign Corporation; and
GERARD P. VITANZO, an Individual                       DEFENDANTS


                       **OPINION AND ORDER**

      This cause is before the Court on the <u>Daubert</u> Motion that was filed by Defendants in this civil action.  Through the subject Motion, Defendants seek to strike Dr. Robert W. McLeod, Plaintiff's expert economist, from testifying at trial.  Having considered the pleadings, the attachments thereto that include excerpts from Dr. McLeod's expert report, as well as supporting and opposing authorities, the Court finds the Motion is well taken and should be granted.


                          **I.  Background**

      Nann K. Smith ("Smith") was killed after being struck by a commercial vehicle driven by Gerard P. Vitanzo ("Vitanzo"). Vitanzo was employed by YRC, Inc. ("YRC"), at the time of the accident.  In 2014, Annie K. Sam ("Sam"), Smith's sister, filed this wrongful death lawsuit against YRC and Vitanzo alleging claims

of negligence, gross negligence, and respondeat superior. During the course of discovery, Sam designated Robert W. McLeod, Ph.D. ("McLeod") as an expert economist. Defendants have now moved to strike McLeod under <u>Daubert</u>.

## II. Discussion

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Before permitting an expert to testify, the trial court "must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case." <u>Watkins v. Telsmith, Inc.</u>, 121 F.3d 984, 988-89 (5th Cir. 1997)(citing <u>Daubert v. Merrill Dow Pharms., Inc.</u>, 509 U.S. 579, 589 (1993)). Whether an expert's opinion is reliable is determined by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid." <u>Daubert</u>, 509 U.S. at 592–93. To be admissible, the "expert's testimony must be reliable at each and every step", in other words, "[t]he reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts

underlying the expert's opinion, the link between the facts and the conclusion, *et alia*." <u>Knight v. Kirby Inland Marine Inc.</u>, 482 F.3d 347, 355 (5th Cir. 2007)(internal quotations omitted). The issue of relevance focuses upon "whether [that] reasoning or methodology properly can be applied to the facts in issue." <u>Id.</u> at 593.

McLeod is expected to offer expert testimony as to the loss of income that resulted from Smith's death. As regards the issue of income loss, the record shows that Smith had been employed as the Department Director of Family and Community Services for the Mississippi Band of Choctaw Indians ("Band") from 1996 to 2007. <u>See</u> Mot. [Docket No. 48], Ex. 2, at 1. Smith's employment with the Band was terminated in October of 2007, at which time her annual salary was $156,226.56.

In 2008, Smith reported wages in the amount of $101,929.00 and $47,740.00 in pensions/annuities. <u>Id.</u> at 1-2. McLeod assumes that the wages and pensions/annuities reported in 2008 were part of the severance package Smith received upon her termination. <u>Id.</u> at 3.

In 2009, Smith reported no taxable wages. The vast majority of the $110,940.00 in gross income reported by Smith that year was from pensions and annuities.

In 2010, Smith reported wages in the amount of $6,222.00 and no other form of income.

Although there is no evidence that Smith had worked in the behavioral health field for over three years, and there is no

3

evidence that she was seeking employment in that field,[1] McLeod has proffered expert opinions regarding Smith's loss of past and future income based on her "Projected Employment" as a Director of Behavior Health Programs.  McLeod further opines that Smith would have held a position in her "Projected Employment" from the date on which she died (i.e. January 8, 2011) through August 31, 2019, and that she would have had a starting salary of $167,501.  See Mot. [Docket No. 48], Ex. 1 (McLeod Report), 6.  Defendants move to exclude McLeod's loss of income opinions on the grounds they are speculative.

Here, there is no evidence that Smith had worked in the behavioral health field, or made any attempt to become re-employed in that field, following her termination in October of 2007. Additionally, Smith did not have any earned wages during 2008[2] or 2009, and reported only approximately $6,000 in wages for 2010.  It does not appear that McLeod considered any of this evidence when formulating his expert opinions.  Instead, McLeod has apparently just assumed that, despite the fact that there is no evidence that

---

[1] During discovery, Sam indicated that she did not have any information regarding (1) the efforts made by Smith to seek employment after she was terminated by the Band, (2) the identity of people/entities from whom Smith sought employment, or (3) the reasons Smith had decided to not seek employment and/or was not hired.  See Mot., Ex. 3, at Interrog. 3.

[2] McLeod has assumed that the $101,929.00 in wages reported by Smith in 2008 were part of the severance package she received following her termination by the Band.

Smith was actively seeking employment, that she would have been hired as the Director of a Behavior Health Program, with a starting annual salary of over $167,000.00, on the day she died. Because there is no evidence supporting McLeod's opinions in the record, the Court finds his opinions regarding Smith's "Projected Employment" are based on nothing more than speculation and conjecture, as opposed to fact. Accordingly, the Court finds McLeod's opinions do not satisfy the rigors of Daubert. See e.g. Paz v. Brush Eng'red Materials, Inc., 555 F.3d 383, 388 (5th Cir. 2009)("Where an expert's opinion is based on insufficient information, the analysis is unreliable."); Masinter v. Tenneco Oil Co., 929 F.2d 191, 194 (5th Cir. 1991)(explaining that an award of damages cannot be based on speculative or conjectural evidence); Scardina v. Maersk Line, Ltd., 2002 WL 1585566, at *2–3 (E.D. La. July 15, 2002)(excluding expert testimony when sporadic earnings history did not support plaintiff's projected annual income). See also General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) ("[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert", and that expert testimony may be excluded if the court concludes "there is simply too great an analytical gap between the data and the opinion proffered.").

    Having found that McLeod's opinions regarding loss of income

5

are not sufficiently tied to the facts or evidence in the record, the Court finds his opinions are not admissible under <u>Daubert</u>. Accordingly, the Court will grant the Motion to Exclude McLeod as an Expert Witness in this case.

### III. Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Motion to Exclude Dr. Robert W. McLeod as an Expert Witness [Docket No. 48] is hereby granted.

SO ORDERED this the 9th day of June, 2015.

<u>s/ William H. Barbour, Jr.</u>
UNITED STATES DISTRICT JUDGE
